IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ELAINE ABRAMSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:05-CV-0076-M |
| | § | |
| AMERICA ONLINE, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Motion to Dismiss filed by Defendant America Online, Inc. ("AOL") on March 2, 2005. Plaintiff has requested oral argument of Defendant's Motion. The Court DENIES Plaintiff's request for oral argument and DENIES Defendant's Motion to Dismiss. The Court finds that Plaintiff filed this suit in an improper forum, and therefore TRANSFERS the suit to the United States District Court for the Eastern District of Virginia. *See* 28 U.S.C. § 1406(a) (2005).

Background

Plaintiff Elaine Abramson ("Abramson") is a professional artist, who designs and licenses children's cartoon characters. In 1999, Abramson obtained an internet account with AOL, and began using the email address AAArtwork@aol.com in connection with her business. Abramson claims that since January of 2002, AOL has permitted her email address to be used as the purported originator of "thousands of emails. . . with a pornographic or otherwise lascivious content." She asserts claims against AOL for breach of contract, negligence, deceptive trade practices, conversion, an unspecified copyright offense, and a violation of the Lanham Act.

1

In its Motion to Dismiss, AOL alleges Abramson is bound by a forum selection clause, contained in its Member Agreement, which obligates her to file suit exclusively in "the courts of Virginia". In response, Abramson alleges she did not agree to be bound by the Member Agreement, and had no actual notice of its existence. She claims her son set up her AOL account for her. In addition, Abramson protests that dismissal would result in some of her claims being barred by statutes of limitations, and that she would suffer financial hardship if forced to reinitiate her suit in Virginia.

Analysis

*I.     Validity of the Member Agreement*

Before the Court turns to the forum selection clause, it must determine whether a valid contract exists between the parties. Plaintiff argues she is not bound to the Member Agreement, because her son set up her AOL account on her behalf, and because she never received actual notice of the Agreement. However, under Texas agency law, Abramson is bound under the Agreement if she: (1) gave her son actual authority to sign it on her behalf; (2) conferred apparent authority on her son by acting in such a way as to indicate to a reasonably prudent person that her son had authority bind her; or (3) ratified the contract. *Humble Nat. Bank v. DCV, Inc.*, 933 S.W.2d 224, 237 (Tex. App.-- Houston [14 Dist.] 1996, writ denied). Ratification occurs where the principal's "acts, conduct or affirmative acquiescence" indicate her willingness to be bound to a contract, despite her lack of signature thereon. *Little v. Clark*, 592 S.W.2d 61, 64 (Tex. Civ. App.--Fort Worth 1979, writ ref'd n.r.e.).

It is unclear from the evidence before the Court whether Abramson gave her son actual authority to bind her to the Member Agreement when he created an AOL account for her. In her Affidavit, Abramson claims she expressed her desire for internet access to her husband, who then

asked their son to create the account. The evidence does not indicate whether Abramson expressly agreed to delegate this task to her son. However, assuming the son did not have actual authority, the Court finds Abramson gave her son apparent authority to bind her to the Member Agreement. A principal confers apparent authority on her agent when she knowingly or voluntarily permits the agent to hold himself out as her representative. *See id.* at 63-64 (husband was bound under a real estate contract because he permitted his wife to sign his name). Here, Abramson gave permission, either directly or through her communications with her husband, for her son to agree electronically to the contract with AOL.

In the alternative, the Court finds Abramson ratified the contract. Abramson admits that immediately after her son initiated her AOL account, he informed her that he had done so. Abramson subsequently accepted the benefits of that transaction, and took affirmative actions to reinstate her service on several occasions, after it was suspended for non-payment. Although there is no evidence indicating whether she actually became aware of the terms of the Member Agreement, it is beyond doubt Abramson knew her service with AOL was subject to a contract. Her failure to review the terms of that contract, while accepting its benefits, demonstrates affirmative acquiescence to the Member Agreement. *See Motel Enterprises, Inc. v. Nobani*, 784 S.W.2d 545, 547 (Tex. App.-Hous. [1 Dist.] 1990, no writ) (ratification may be "inferred from the existing facts and circumstances, as where a party retains the benefits of an invalid contract with full knowledge of the facts that make the contract voidable").

II.   *Enforceability of the Forum Selection Clause*

A party seeking to enforce a contractual forum selection clause may pursue one of two types of relief from the Court: (1) dismissal of its opponent's claims, under FED. R. CIV. P. 12(b)(3), for improper forum; or (2) transfer of its opponent's claims to the forum contemplated by the contract.

The Fifth Circuit, in *Int'l Software Sys., Inc. v. Amplicon, Inc.*, 77 F.3d 112, 115 (5th Cir.1996), held that Motions to Dismiss based on forum selection clauses are examined under the test outlined in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972). *See also Vartec Telecom, Inc. v. BCE Inc.*, 2003 WL 22364302 (N.D. Tex. Oct. 9, 2003) (same). The *Bremen* test requires that the Court treat forum selection clauses as prima facie valid, and enforce them "unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *Bremen,* 407 U.S. at 10. In contrast, when a party asserts a Motion to Transfer Venue, the Court engages in an "individualized, case-by-case consideration of convenience and fairness." *Amplicon*, 77 F.3d at 115, *citing Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988).

Here, AOL has asserted a Motion to Dismiss, rather than a Motion to Transfer Venue. Consequently, Abramson bears the heavy burden, under *Bremen*, of showing: (1) the incorporation of the forum selection clause into the agreement was the "product of fraud or overreaching"; (2) she will "for all practical purposes be deprived of [her] day in court because of the grave inconvenience or unfairness of the selected forum"; (3) the fundamental unfairness of the chosen law will deprive her of a remedy; or (4) enforcement of the clause would contravene strong public policy of the forum state. *Haynsworth v. The Corporation*, 121 F.3d 956, 963 (5th Cir. 1997).

*A.    Incorporation of the Forum Selection Clause Was Not the Product of Fraud or Overreaching*

Under the *Bremen* test, the question is not whether the contract, itself, is the product of fraud or overreaching. Instead, the Court's focus is whether the inclusion of the forum selection clause in the contract was fraudulent or coerced. *Haynsworth*, 121 F.3d at 963. Plaintiff does not allege AOL engaged in fraud or any deceitful activity. She argues the clause is overreaching because it consists of a boilerplate provision in a contract of adhesion.

The Supreme Court has held that forum selection clauses in form types of contracts are

enforceable, so long as they satisfy "judicial scrutiny for fundamental fairness." *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991) (upholding a clause that was contained within the fine print that accompanied the plaintiffs' cruise tickets). The forum selection clause in *Carnival* was held to be fair, despite the disparity of bargaining power between the parties, because: (1) the defendant had a valid reasoning for limiting the fora in which it could be subject to suit; (2) the defendant was headquartered in the chosen forum; (3) the clause reduced confusion for prospective litigants; and (4) the clause likely benefited the plaintiffs by reducing the price they paid for the defendant's services. *See id.* at 594. Each of the same arguments apply in this case, and suggest that the forum selection clause in AOL's Member Agreement is not fundamentally unfair. Plaintiff's efforts in her Response to distinguish *Carnival* and its progeny are unpersuasive.

In the alternative, the Court finds Plaintiff cannot show the insertion of the clause represents overreaching. The form nature of the contract and alleged disparity of bargaining power apply to the Member Agreement as a whole. Abramson has not alleged that Defendant's insertion of the forum selection clause into the Member Agreement was, in isolation, an act of overreaching. Therefore, she has not satisfied the first prong of the *Bremen* test. *See Haynsworth*, 121 F.3d at 963.

B.  *Abramson Will Not Be Deprived of Her Day in Court By the Grave Inconvenience or Unfairness of the Chosen Forum*

Abramson argues she will suffer grave inconvenience if the Court dismisses her claims, because some of her claims will be barred by statutes of limitations. She also claims that her financial circumstances make her unable to retain new counsel to reassert her claims in Virginia. The Court finds that these assertions, if true, do not satisfy Abramson's burden under *Bremen*.

The evidence before the Court indicates Abramson had knowledge of the facts underlying each of her causes of action in early 2002. Abramson admits that soon after AOL allegedly allowed

5

her email account to be used to transmit pornographic and other unauthorized emails, she began receiving complaints from recipients of those communications. However, Abramson inexplicably did not file suit until January of 2005. Assuming Abramson will be inconvenienced if the Court dismisses her claims, the evidence indicates her inconvenience will be caused by her delay in filing suit, rather than any characteristic of the parties' chosen forum.

Abramson's assertion that she may not be able to afford to retain counsel in Virginia is also insufficient to demonstrate the unfairness or grave inconvenience of the Virginia courts. This Court notes no evidence that Plaintiff cannot obtain counsel in Virginia on a contingent fee basis. As the Supreme Court suggested, in dicta, in *Carnival*, the expense of trying a case in a particular forum is insufficient to satisfy a party's burden under *Bremen*. *See Carnival*, 499 U.S. at 594. The Court finds no evidence that the consequence of granting AOL's Motion is so grave as to deny unfairly to Plaintiff her day in court.

C.  *Abramson's Claims Will Not Be Subjected to Fundamentally Unfair Law*

Plaintiff has not alleged that a transfer of her claims to Virginia would subject her claims to law that is "fundamentally unfair", and therefore, this element of the *Bremen* test weighs in favor of granting AOL's Motion to Dismiss.

D.  *Enforcement of the Clause Does Not Contravene Strong Public Policy of the State of Texas*

Abramson alleges that enforcement of the forum selection clause would violate public policy of the State of Texas, because it would bind her to a contract she never read. However, as discussed above, Texas law binds her to the Member Agreement by virtue of her agency relationship with her son, and her subsequent ratification of the contract. A person in Abramson's position has a duty to read the "plain terms of the agreement", and cannot rely solely on another person's representations. *Haynsworth*, 121 F.3d at 965. Therefore, as the Fifth Circuit has indicated, enforcement of a forum

6

selection clause against a party who has chosen not to read the terms of her contract does not conflict with the public policy interests of the State of Texas. *Id.*, at 966.

### Remedy

Plaintiff has failed to satisfy her heavy burden, under *Bremen*, of showing the forum selection clause is unenforceable. As a result, the Court has discretion to either dismiss her claims or transfer the case, *sua sponte*, under 28 U.S.C. § 1406(a). (if the Court determines a case is sitting in the wrong district or division, it "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought"); *See also Jackson*, 245 F.3d at 522-23; *Caldwell v Palmetto State Sav. Bank*, 811 F2d 916, 919 (5th Cir. 1987). The Court is of the opinion that justice would be served by transferring Abramson's claims to Virginia. *See, e.g. National Voice Communications, Inc. v. Federal Transtel, Inc.*, 2001 WL 460867 (N.D. Tex. Apr 30, 2001) (the Court, finding the defendant had proven improper venue, elected to transfer the plaintiff's claims to Georgia, as an alternative to dismissing them).

It is therefore ORDERED that AOL's Motion to Dismiss is DENIED, and this suit is TRANSFERRED to the United States District Court for the Eastern District of Virginia.

**SO ORDERED.**

**DATED:** May 25, 2005.

_____
Barbara M. G. Lynn
UNITED STATES DISTRICT JUDGE